CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SUR-
ROGATE.—October, 1881.

BALLARD V. CHARLESWORTH.

*In the matter of the grant of letters testamentary to
SAMUEL CHARLESWORTH, as executor of the will
of KELSEY BALLARD, deceased.*

Code Civ. Pro., § 2638, subd. 1, allowing an objection to the grant of
letters testamentary to one named as executor in a will, on the ground
"that his circumstances are such that they do not afford adequate
security to the creditors or persons interested in the estate, for the
due administration" thereof, does not differ materially from the stat-
ute which it supersedes. The term "adequate security" does not
have reference, primarily, to pecuniary responsibility.

The fact that one named as executor in a will is worth only half as much
as testator is not a sufficient reason for requiring a bond as a condi-
tion precedent to the issuing to him of letters testamentary.

Where a testator, in his good judgment, has exhibited confidence in an-
other by nominating the latter executor of his will, a court should not
interfere on so slight a pretext as mere poverty on the part of the nom-
inee.

Shields v. Shields, 60 *Barb.*, 56—followed.

OBJECTIONS to the issuing of letters testamentary to
Samuel Charlesworth, named as executor in decedent's
will; filed by Truman A. Ballard and another, legatees
therein mentioned. The facts appear sufficiently in the
opinion.

D. B. ALLEN, *for executor.*

WILLIAM MANLEY, *for objector.*

THE SURROGATE.—The only ground upon which objec-

tions to the issuing of letters testamentary to the executor named in the will are based, is that his financial condition is so precarious that the estate would be unsafe in his hands.   There is no imputation resting upon his integrity, and no pretence but that he is honest and competent to manage the large estate which the testator saw fit to entrust to his charge. ·

The aggregate property of deceased is about twelve thousand dollars, while the executor is worth only about six thousand dollars, and from this the two legatees who have filed objections infer that the estate is liable to be dispersed or wasted.   Subdivision 1 of § 2638 of the Code, which is the foundation of these proceedings, is not materially different from the statute in force previously to its enactment (see 3 R. S., 6th ed., 73, § 7). Under that statute, it has been held that the term "adequate security" does not have reference primarily to the executor's *pecuniary* responsibility, but to his habits of husbandry, whether provident or improvident, whether reckless or careful (Shields v. Shields, *60 Barb., 56;* Mandeville v. Mandeville, *8 Paige, 475*).

The doctrine is a salutary one that, where a testator, in the maturity of his powers, and having an intimate personal relation with the man he names as his executor, living in close proximity to him for years, and understanding thoroughly his temperament, habits and mode of life, chooses his executor thus deliberately, a court should not interfere with this clearly expressed wish of deceased, unless there is palpable proof showing that testator has made an injudicious and unsafe selection.   The bare isolated fact that the executor is only worth one half this large estate is not a sufficient reason

to require the giving of a bond as a condition precedent to the issue of letters.

Even if he was poor, it could not overmatch a life of conceded integrity and trustworthiness. If the testator, in his good judgment, had confidence in the integrity of his executor, surely a court should not interfere on so slight a pretext.

I, therefore, find and direct that the proceedings be dismissed and that letters be issued to the executor.

Ordered accordingly.